**MULHOLLAND CONSTRUCTION CO.**

*v.*

**LEE PARE & ASSOCIATES, INC.**

No. 89–399–Appeal.

Supreme Court of Rhode Island.

July 12, 1990.

James A Farrell, Miller, Farrell, Cenerini & Murphy, Warwick, for plaintiff.

Normand G. Benoit, Partridge, Snow & Hahn, Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on an appeal by the plaintiff, Mulholland Construction Co. (Mulholland), from a summary judgment entered in the Superior Court in favor of the defendant, Lee Pare & Associates, Inc. (Pare). We affirm. The facts of the case insofar as pertinent to this appeal are as follows.

Mulholland entered into a contract with the town of Narragansett for construction of the Scarborough Wastewater Treatment Facility Ocean Outfall on March 12, 1984. This construction agreement required Mulholland to dig a trench a minimum of eight feet below the ocean floor for the placement of a 2,200–foot outfall pipe for a sewage-treatment plant. The design and engineering studies for the project were prepared by Pare, a firm specializing in engineering design. One of the activities undertaken by Pare was a preliminary study of the seabed wherein the trench was to be prepared. Apparently Pare, instead of making its own test borings, relied upon a prior survey for another contract that had been accomplished through test bor-

ings in 1962 by American Drilling Co. In any event, the information provided during the bidding process indicated to Mulholland that the seabed consisted of sand, silt, and fine gravel. When Mulholland began the excavation, it soon discovered that the seabed consisted of cobbles and boulders, which made excavation much more difficult and expensive.

Consequently, Mulholland sought modifications in the contract for additional compensation based not only upon the nature of the seabed but also upon the depth of water encountered over the area of excavation. The request for equitable adjustment was rejected. Arbitrators later found that the rejection of the requested equitable adjustment was due to the hard-line position taken by the Department of Environmental Management (DEM) and the Federal authorities who were overseeing and sponsoring the project. The arbitrators indicated that the town of Narragansett and Pare did not object to equitable adjustment. Nevertheless, since agreement could not be reached concerning the requested adjustment, the parties proceeded to arbitration. The town appointed one arbitrator, Mulholland appointed another arbitrator, and the two arbitrators appointed a third arbitrator.

The parties gave the arbitrators a series of issues to determine, but the arbitrators proceeded to accept evidence and litigate on the merits the entire range of disputes between the parties. A majority of the arbitrators issued findings that were favorable to Mulholland in June of 1985. Thereafter, the case was submitted to the Superior Court on Mulholland's request for further arbitration. The Superior Court remanded the matter to the arbitrators on August 2, 1985, for further findings, inter alia, on all questions regarding damages and necessary contract interpretations.

In conformity to this order the arbitrators again assembled and issued further findings that awarded $509,822.98 to Mulholland for total damages for additional costs to the date of the findings (December 1985) and $222,325 for additional estimated costs necessary to complete the contract.

It is most significant to note that the arbitrators awarded compensation for trench excavation, additional job overhead, mark-up on additional costs, statutory interest at the rate of 12 percent, but rejected certain other claims, including the cost of arbitration and punitive damages. One arbitrator would have awarded $50,000 for the cost of arbitration; two arbitrators would have awarded nothing. One arbitrator would have awarded punitive damages but agreed with the other two arbitrators that there was insufficient evidence to establish such an award.

In support of and in opposition to this appeal, the parties raise three issues that will be considered in the order in which they are set forth in the parties' briefs.

I

The Applicability of Res Judicata or Collateral Estoppel

■ There is no question that summary judgment is a drastic remedy and should be awarded only in the event that a plaintiff or a defendant is entitled to judgment as a matter of law and that there is no question of material fact outstanding between the parties. *Ludwig v. Kowal,* 419 A.2d 297, 301 (R.I.1980). The question of issue preclusion raised under the doctrines of res judicata or collateral estoppel generally presents to the court an issue of law. *Corrado v. Providence Redevelopment Agency,* 113 R.I. 274, 320 A.2d 331 (1974); *Providence Teachers Union v. McGovern,* 113 R.I. 169, 319 A.2d 358 (1974); *Perez v. Pawtucket Redevelopment Agency,* 111 R.I. 327, 302 A.2d 785 (1973).

■ In the case at bar the arbitration award was ultimately confirmed after the additional findings by a judgment entered in the Superior Court on April 30, 1986. We have held that an arbitration award that is confirmed by the Superior Court is equivalent to a final judgment in an action at law. *Paola v. Commercial Union Assurance Companies,* 461 A.2d 935, 937 (R.I.1983). Consequently the question before this court is whether the judgment entered pursuant to the arbitration award

precludes further litigation between Mulholland and Pare. We pointed out in the case of *Providence Teachers Union v. McGovern, supra,* that the doctrine of res judicata precludes relitigation between the parties to a prior action or their privies of matters that either were litigated or might have been litigated in a prior action. We further pointed out that, under the general doctrine of res judicata, a subsidiary doctrine known as collateral estoppel would preclude a party from relitigating issues with a party or those in privity with him that had actually been litigated in a prior case.

It has been held in *Associated Construction Co. v. Camp, Dresser & McKee, Inc.,* 646 F.Supp. 1574 (D.Conn.1986), that a design engineer was in privity with the city of New Haven, which had been the owner in a contract for construction between the city and the construction company based upon negligent preparatory surveying work, design, and supervision carried out by the engineers. The court in that case held that after the construction company had litigated the question of damages with the city in an arbitration proceeding, it would be precluded from proceeding against the engineer for damages that had already been awarded in the arbitration proceeding arising out of its conduct in respect to the performance of the contract.

■ We are not entirely persuaded that an engineer and a contracting owner will always be in perfect privity in respect to the type of damages that may be awarded in respect to each party. The plaintiff argues, for example, that its action against Pare is in tort for negligence, as well as for breach of contract. It further argues that those arbitration proceedings in regard to the town of Narragansett were based wholly upon contract. The simple answer to this question is that the arbitration claims made and adjudicated between the town of Narragansett and Mulholland were based entirely on the negligent survey, design, and supervision work done by Pare. It must be remembered that an arbitration proceeding is not constricted by the rules of pleading and other legal parameters that

might attach to an action at law or in equity. *See Jacinto v. Egan,* 120 R.I. 907, 391 A.2d 1173 (1978). As long as the award is drawn from the essence of the contract and is not wholly irrational, the arbitrators may make determinations that might otherwise not be possible to a judicial tribunal. *Hart Engineering Co. v. Pawtucket Water Supply Bd.,* 560 A.2d 329, 330 (R.I.1989). In the case at bar, regardless of the constrictions that might be argued by Pare concerning the issues submitted to the arbitrators, it is clear from their final award that they considered everything that might be raised under the pleadings in this civil action, including the issue of punitive damages. The fact that the arbitrators unanimously determined that insufficient evidence had been presented to support an award for punitive damages does not mean that they did not consider the issue on its merits.

Consequently we are of the opinion that whether the doctrine of res judicata or the somewhat more restrictive doctrine of collateral estoppel should be applied, all issues arising out of the complaint in tort were actually litigated in the arbitration proceedings and ultimately the findings and award were confirmed by the Superior Court.

## II

### Was Mulholland Fully Compensated in the Arbitration Proceedings?

On this issue a study of the arbitrators' initial award and supplemental award indicates that the arbitrators compensated Mulholland for all the damages to which a majority of the arbitrators considered Mulholland to be entitled. Although Mulholland may now express a desire for further compensation, there seems to be no question that all elements that could be raised under their present complaint against Pare were considered and decided by the arbitrators. This award took into consideration all additional costs and overhead related to the extra work that was required to be performed under more stringent conditions as a result of the erroneous and negligent survey and design work performed by Pare. Even the issue of punitive damages

and the cost of arbitration were considered, although both were rejected by the arbitrators. Consequently, whereas on an abstract, theoretical basis Mulholland may claim that it was not made whole, it was given all the compensation to which the arbitrators (or a majority thereof) felt Mulholland was entitled. Therefore the principle of issue preclusion under the doctrine of res judicata and collateral estoppel would prevent, as a matter of law, the relitigation of these issues in a judicial tribunal. *See* Restatement (Second) *Judgments* § 27 (1982); Restatement (Second) *Judgments* § 51 (1982).

### III

### Was Summary Judgment Improper in This Case under the Doctrine of the Law of the Case?

 Mulholland argues that a justice of the Superior Court, in an earlier ruling, denied its motion for partial summary judgment in which it sought to establish that Pare was negligent as a result of the prior findings of the arbitrators as confirmed by the Superior Court. We believe that this denial of summary judgment did not preclude the later grant of summary judgment under the doctrine of the "law of the case" that was set forth in *Payne v. Superior Court,* 78 R.I. 177, 80 A.2d 159 (1951). We have held that a prior denial of a motion for summary judgment does not preclude the later granting of summary judgment on an expanded record. *Rhode Island Hospital Trust National Bank v. National Health Foundation,* 119 R.I. 823, 384 A.2d 301 (1978). In this case it is difficult to review the basis for the initial ruling denying the motion for partial summary judgment since there is no record of the rationale of the court's decision in that case. However, after the denial of that motion for partial summary judgment, the record was significantly expanded by additional pleadings, including defenses alleging arbitration and award, payment, release, and res judicata.

Consequently the second motion justice had before him a significantly different record from that presented to the first motion justice. As we pointed out in *Rhode Island Hospital Trust National Bank v. National Health Foundation, supra,* the second motion justice could consider the motion for summary judgment in the exercise of his discretion. In the case at bar, the consideration of the issues raised by the motion for summary judgment on behalf of Pare did not constitute an abuse of discretion. The determination of the motion justice was correct as a matter of law.

For the reasons stated, the appeal of Mulholland is denied and dismissed. The summary judgment entered in the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.